# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHIGAN OPEN CARRY, INC. and
MICHIGAN GUN OWNERS, INC.,

        Plaintiffs-Appellees,

v

GRAND RAPIDS-KENT COUNTY
CONVENTION ARENA AUTHORITY and SMG
HOLDINGS, INC.,

        Defendants-Appellants.

UNPUBLISHED
November 27, 2018

No. 339070
Kent Circuit Court
LC No. 16-006073-CZ

---

Before: MURPHY, P.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM.

Defendants, Grand Rapids-Kent County Convention Arena Authority (CAA) and SMG Holdings, Inc. (SMG), appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of plaintiffs, Michigan Gun Owners, Inc. (MGO) and Michigan Open Carry, Inc. (MOC). We reverse and remand.

## I. BACKGROUND

The CAA was established by the City of Grand Rapids and Kent County under the Convention Facility Authority Act, MCL 141.1401 *et seq*. The CAA employs SMG to manage the CAA's facilities at DeVos Place, DeVos Performance Hall, and Van Andel Arena. The CAA bans the concealed carry of firearms at all three venues. The frequently asked questions (FAQs) on the websites for each venue also stated that the open carry of firearms is "rarely" permitted and provides a contact number for individuals to ask about the firearms policy at specific events.

Plaintiffs filed a complaint in the trial court, alleging that the CAA's firearms policy violated MCL 123.1102, the statute prohibiting a local unit of government from regulating firearms, and that the state statutory scheme regulating firearms preempted the CAA's authority to devise a firearms policy contrary to state law. Plaintiffs sought a declaratory judgment to that effect. Defendants maintained that their firearms policy was consistent with state law. The parties filed competing motions for summary disposition under MCR 2.116(C)(10). On the question of the validity of the firearms policy, the trial court denied defendants' motion, granted plaintiffs' motion, and issued an opinion concluding that the firearms policy was unenforceable. The trial court agreed with plaintiffs that state law preempted the CAA's attempt to regulate

-1-

firearms. The trial court determined that the ban on the concealed carry of firearms at Van Andel Arena was valid because the arena is a sports venue and an entertainment facility, locations where the concealed carry of firearms is prohibited by MCL 28.425o(1)(c) and (f). The trial court disagreed with defendants that they could ban the concealed carry of firearms at DeVos Place and DeVos Performance Hall because they were not locations where MCL 28.425o prohibited the concealed carry of firearms. The trial court found that the concealed carry and open carry of firearms was "normally" permitted at DeVos Place and DeVos Performance Hall. Therefore, the trial court disagreed with the CAA's statement that the open carry of firearms was "rarely" permitted, and it concluded that the CAA's current firearms policies were unenforceable. Next, the trial court acknowledged that a lessee could decide to ban weapons at an event, but it ruled that defendants, as governmental entities, should not offer to enforce such a ban. The trial court concluded that the CAA's attempt to ban firearms was not clear regarding which venue the rules applied to, and it cautioned that those rules must comply with state law. Accordingly, the trial court declared the CAA's current firearms policy unenforceable because it was contrary to state law.

## II. DISCUSSION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013), and a trial court's ruling on a request for a declaratory judgment, *Janer v Barnes*, 288 Mich App 735, 737; 795 NW2d 183 (2010). Summary disposition is proper if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The trial court must consider all of the documentary evidence in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A genuine issue of material fact exists if reasonable minds could differ on the issue. *Gorman*, 302 Mich App at 116.

This Court also reviews de novo questions of statutory interpretation. *Id*. "Whether a state statutory scheme preempts a local regulation is a question of statutory interpretation" reviewed de novo. *Capital Area Dist Library v Mich Open Carry, Inc*, 298 Mich App 220, 227; 826 NW2d 736 (2012) ("*CADL*"). The primary purpose of statutory construction "is to discern and give effect to the Legislature's intent." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002). "The first step in that determination is to review the language of the statute itself." *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "It is a maxim of statutory construction that every word of a statute should be read in such a way as to be given meaning, and a court should avoid a construction that would render any part of the statute surplusage or nugatory." *In re MCI Telecom Complaint*, 460 Mich at 414. Courts may look beyond the text of the statute to discern legislative intent only if the language of the statute is ambiguous. *Sun Valley Foods Co*, 460 Mich at 236.

### B. SEATING CAPACITY

-2-

Defendants argue that a prohibition on the concealed carry of firearms at DeVos Place, which includes DeVos Performance Hall, is permissible because it is an entertainment facility that can seat more than 2,500 people. We conclude that the trial court erred when it ruled that the concealed carry of firearms was not prohibited by statute at DeVos Place because the trial court did not make a finding about seating capacity.

State law generally prohibits concealed pistol licensees from carrying a concealed pistol at several specified locations, including the following locations:

> (c) A sports arena or stadium.

> * * *

> (f) An entertainment facility with a seating capacity of 2,500 or more individuals that the individual knows or should know has a seating capacity of 2,500 or more individuals or that has a sign above each public entrance stating in letters not less than 1-inch high a seating capacity of 2,500 or more individuals. [MCL 28.425o(1)(c) and (f).]

As it relates to this case, if DeVos Place, which contains DeVos Performance Hall, is an entertainment facility with a seating capacity of 2,500 or more people, then concealed pistol licensees are prohibited from carrying concealed pistols on the premises under state law, and the CAA's policy banning concealed weapons is not contrary to state law.

First, we address whether DeVos Place, and by extension, DeVos Performance Hall, is an "entertainment facility" included in MCL 28.425o(1)(f). The statute does not define the phrase "entertainment facility." Courts may consult dictionaries to ascertain the plain meaning of undefined statutory terms. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). We "consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Douglas v Allstate Ins Co*, 492 Mich 241, 256; 821 NW2d 472 (2012) (quotation marks and citation omitted). "Entertainment" is defined in relevant part as something amusing, diverting, or engaging, such as a public performance. *Merriam-Webster's Collegiate Dictionary* (11th ed). The term "facility" is defined as a building "established to serve a particular purpose." *Merriam-Webster's Collegiate Dictionary* (11th ed). The Convention Facility Authority Act, under which the CAA was established, defines "convention facility" as

> all or any part of, or any combination of, a convention hall, auditorium, arena, sports facility, market, or other facility meeting rooms, exhibition area, and related adjacent public areas that are generally available to the public for lease or use, together with appurtenant property, including parking lots or structures, necessary and convenient for use in connection with the convention facility. [MCL 141.1403(c).]

DeVos Performance Hall is fully contained within DeVos Place, and there is no factual dispute that DeVos Performance Hall was built for performances that qualify as entertainment. Therefore, DeVos Place, which houses DeVos Performance Hall, is an entertainment facility.

To fall within MCL 28.425o(1)(f), DeVos Place must have a seating capacity of 2,500 or more. The trial court concluded that the CAA could not implement a concealed carry ban at DeVos Place and DeVos Performance Hall because they do not fall within the locations listed in the statute, but the trial court did not make a finding about the seating capacity at DeVos Place, which includes DeVos Performance Hall, before reaching this conclusion. As a result, we remand to the trial court to make findings regarding the seating capacity at DeVos Place to determine whether it falls within the ban on the concealed carry of firearms in MCL 28.425o(1)(f). If DeVos Place is found to have a seating capacity of 2,500 or more, the CAA's prohibition on the concealed carry of firearms at DeVos Place would not be contrary to state law. Because DeVos Performance Hall is fully contained within DeVos Place, the CAA's prohibition at DeVos Performance Hall would likewise comply with state law.

## C. PRIVATE LESSEES

Defendants argue that the trial court erred by concluding that defendants, as local units of government, could not enforce a private lessee's ban on firearms. Defendants contend that a private lessee has the right to exclude others. We agree. The possessory right to real property includes the right to exclude others from one's property, and a violation of that right gives rise to an action for trespass. *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 58-59; 602 NW2d 215 (1999). A lease gives the lessee "possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease." *United Coin Meter Co v Gibson*, 109 Mich App 652, 655-656; 311 NW2d 442 (1981). It is undisputed that the rights of a private lessee include the right to exclude. The parties dispute whether the CAA can enforce the rights of a private lessee who wishes to ban firearms at an event. Although the CAA is subject to MCL 123.1102, we conclude that the CAA's enforcement of a private lessee's policy would not violate MCL 123.1102.

The Legislature enacted MCL 123.1102 for the stated purpose of prohibiting "local units of government from imposing certain restrictions" on firearms. 1990 PA 319, title, as amended by 2015 PA 29. MCL 123.1102 states in full:

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols, other firearms, or pneumatic guns, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.

" 'Local unit of government' means a city, village, township, or county." MCL 123.1101(b). The CAA is not a city, village, township, or county, but it was established jointly by a city and a county. As in *CADL*, 298 Mich App at 231-233, in which the district library was jointly established by a city and a county, the CAA is subject to MCL 123.1102.

Nonetheless, MCL 123.1102 does not bar the CAA from enforcing a private lessee's firearms policy. The commas separating the three action clauses in the statute, "impose," "enact or enforce," and "regulate," show that the catchall phrase "in any other manner" applies only to the "regulate" clause, demonstrating that this catchall phrase would apply only to creative

-4-

attempts by local units of government to regulate firearms indirectly. It would not affect the ability of local units of government to enforce private rights to restrict firearms when the statute treats regulation and enforcement as independent actions. Accordingly, plaintiffs improperly join the phrase "in any other manner" to the enforcement clause, and we reject plaintiffs' broad and imprecise interpretation of the phrase "regulate in any other manner."

Instead, the operative statutory phrase pertaining to the CAA's enforcement of a private lessee's right to ban firearms is the second active clause, prohibiting a local unit of government from "enact[ing] or enforce[ing] any ordinance or regulation pertaining to" firearms, MCL 123.1102. An ordinance is "[a]n authoritative law or decree; specif., a municipal regulation, esp. one that forbids or restricts an activity." *Black's Law Dictionary* (10th ed). A regulation is "[a]n official rule or order, having legal force, usu. issued by an administrative agency." *Black's Law Dictionary* (10th ed). Read in context, the statute refers to a law or a rule created by a local unit of government. A private lessee's policy is not an ordinance or a regulation enacted or enforced by a local unit of government. Therefore, the enforcement clause of MCL 123.1102 does not apply to policies created by private lessees.

The parties also dispute the significance of the CAA's statement in the FAQs that firearms are "rarely" permitted. Defendants maintained that the purpose of the FAQs was to inform the public about common answers to common questions, even though there are exceptions to some of the stated policies. For example, the prohibition on food at Van Andel Arena does not apply to diabetics or baby formula. Defendants have also maintained that there is no blanket ban on firearms, the firearms policy at an event depends on the private lessee's request, and SMG staff have received additional training to ensure that the carrying of a firearm is not restricted at an event where firearms are not banned. In addition, the FAQs section states that firearms may be permitted at an event and invites patrons to call to inquire about the firearms policy at a particular event. The FAQs section reflects the possibility that a private lessee may ban firearms, but providing this information to the public does not show that *defendants* have a policy of banning firearms. Accordingly, we do not attribute the same significance to the word "rarely" as the trial court did.

Finally, the trial court's assumption that the CAA dictates the firearms policies of a lease was not based on facts in evidence. Plaintiffs did not contest defendants' assertion that lessees made the choice about whether or not to allow firearms. In short, the trial court erred by attributing the firearms ban to defendants, rather than to private lessees, and by concluding that defendants were prohibited from enforcing a private lessee's choice to ban firearms.

D. CONFLICT PANEL

Defendants ask this panel to declare a conflict with *CADL*, 298 Mich App 220, challenging *CADL*'s preemption analysis. We decline this request. A conflict panel is only warranted when an issue is outcome-determinative. MCR 7.215(J)(3)(a). In light of the factual question whether DeVos Place is an entertainment facility, defendants' request is premature.

We reverse and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Jane M. Beckering